IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

AGORA, INC.,
    Plaintiff

v.                                    Civil No. AMD 99-3162

AXXESS, INC., d/b/a
FINANCIALWEB.COM, INC. and
STOCK DETECTIVE.COM, INC.,
    Defendants

...oOo...

MEMORANDUM

I.     INTRODUCTION

Plaintiff, Agora, Inc. ("Agora"), a Maryland corporation with its principal offices in Baltimore, has brought this diversity action against defendants FinancialWeb.com, Inc. ("F.com"), F.com's predecessor, Axxess, Inc., and its wholly-owned subsidiary, Stock Detective.com, Inc. The gravamen of Agora's claim is its allegation that F.com, in a collection of internet web pages found on the F.com website called "StockDetective.com" ("StockDetective"), published defamatory statements of and concerning Agora by characterizing an online financial newsletter published by Agora, *Taipaonline*, as an "unpaid promoter" of the securities on which *Taipaonline* reports. Pending before the court is F.com's motion to dismiss for lack of personal jurisdiction and for failure to state a claim upon which relief may be granted. *See* Fed.R.Civ.P. 12(b)(2) and 12(b)(6).

No hearing is necessary. For the reasons set forth below, I am persuaded that Agora has failed to state a claim upon which relief may be granted. Because I will dismiss Agora's

defamation claim, I need not finally determine the question of whether this court may properly exercise personal jurisdiction over F.com.[1]

## II. MOTION TO DISMISS STANDARD

A complaint should not be dismissed for failure to state a claim under Fed.R.Civ.P. 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *accord Warth v. Seldin*, 422 U.S. 490, 501(1975); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). Motions to dismiss for failure to state a claim are "granted sparingly and with caution in order to make certain that plaintiff is not improperly denied a right to have his claim adjudicated on the merits." 5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure, Civil 2d § 1349 at 192-93 (1990).

Rule 8(a)(2) requires only that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). A claimant is not

---

[1] Defendants are paradigms of modern internet businesses and have a presence outside of their home states only in "cyberspace." Thus, defendants contend that it would be constitutionally impermissible for a state or federal court to exercise personal jurisdiction over them on state law claims. Agora has requested an opportunity to conduct jurisdictional discovery. Under the circumstances disclosed by the parties' submissions, I would be inclined to grant the request. For present purposes, however, I am satisfied that Agora has made a sufficient prima facie showing to justify my consideration of the legal sufficiency of its complaint. *See Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993)(when the court determines the issue of personal jurisdiction without a hearing, plaintiff's burden is to establish prima facie that personal jurisdiction may be exercised). If my dismissal of this case under Fed.R.Civ.P. 12(b)(6) is reversed on appeal and remanded without any ruling on the personal jurisdiction issue, and if Agora does not consent to the transfer of this case to a district in which the defendants are unquestionably subject to personal jurisdiction, I shall consider further whether to permit jurisdictional discovery.

required to "set out in detail the facts upon which he bases his claim" so long as the claim "will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47. Moreover, all well-pleaded factual allegations are assumed to be true and are viewed in the light most favorable to the plaintiff. *See Jenkins v. McKeithen*, 395 U.S. 411, 421-22 (1969). Only when the factual allegations in support of a claim are not well-pleaded (e.g., when they are "functionally illegible" or "baldly conclusory," *Shuster v. Oppelman*, 962 F.Supp. 394, 395 (S.D.N.Y.1997)), should they not be accepted as true and the claim dismissed.

III. FACTS

As set forth in the Complaint, *Taipaonline* is the internet version of an investment newsletter, *Taipan*, which Agora has published for more than ten years. It has approximately 50,000 subscribers worldwide.

Since March 1997, F.com has published investment information in the nature of editorial content, stock quotes, financial charts and securities data on publicly-traded companies for its online readers free of charge. In July 1999, F.com began furnishing analyses of the disclosure policies of various securities analysts and stock pickers which, like Agora, publish financial and investment newsletters for the benefit of the investing public.

F.com's newsletter analyses are located within the StockDetective website on a

webpage denominated "The List." A hyperlink to The List on the StockDetective[2] page asks the reader "[i]s that a real stock analysis or a paid promotion? Find out if a favorite stock source is merely paid puffery." Clicking on The List hyperlink transports the reader to The List itself, which is a webpage entitled "The Stock Detective Directory of Financial Information Sources Containing Paid Small-Cap Company 'Analysis.'"

The introduction at the top of The List describes stock promoters as a "busy group . . . constantly spinning new hype for the companies they promote." It further identifies what it views as the "latest trend . . . toward promoters who claim no compensation from the companies they're writing about, but allude [sic] to unfettered trading in these companies' shares." Immediately preceding the table of publications named and the StockDetective's ratings of their disclosure policies is an instruction directing the reader to "[c]heck out the key at the bottom of The List for a complete explanation of the disclosure ratings."

Immediately preceding the key to the disclosure ratings referred to at the top of The List page, and found at the bottom, is the hyperlinked instruction, "Important: Please Read Stock Detective Guide to Pseudo-Research and Phony Financial Reports-first" ("the Guide"). When the reader activates the hyperlink to the Guide, the reader is advised that the disclosure rating policies of investment newsletters are critical because, *inter alia*, "[i]n today's

---

[2]StockDetective focuses on publicly-traded securities listed on the over-the-counter bulletin board ("OCTBB"), an electronic securities quotation system regulated by the National Association of Securities Dealers ("NASD"). The OCTBB lists small startup companies that have not been listed on any national exchange and are not subject to federal reporting obligations.

information age discerning unbiased research from paid promotion is often difficult. The distinction is important. In order to make the most informed investment decisions, individuals need to know whether the information guiding their actions consists of real reporting and analysis or mere puffery." The Guide uses the disclosure policies of six publications to illustrate the level of varying kinds of disclosure policies. The Guide makes no direct or indirect reference to *Taipaonline*.

Upon returning to The List page, the reader finds *Taipaonline* named along with approximately seventy-five other publications.[3] *Taipaonline* is listed as an online publication. Its disclosure rating is listed as follows: "unpaid promoter." According to the disclosure rating key provided by F.com, a rating as an "unpaid promoter" signifies "'analysts' or 'stock pickers' who claim they are not paid by the companies for publishing reports, but acknowledge that they do or might trade in shares of the companies they're writing about."[4]

---

[3]The List of 75 publications is a table comprised of three columns. From left to right, the first column lists each publication in alphabetical order; the middle column indicates the nature of the publication, with a hyperlink to that publication's website if the publication is available online; and, the third column indicates StockDetective's analysis of the publication's disclosure policy.

[4]The complete ratings section provides:

**Blanket Disclosure** - one disclaimer fits all the companies discussed in a publication or website; reader is not informed whether the disclaimer applies to all, some or none of the companies
**Full Disclosure** - individual disclaimers for each company profile, including the form and amount of all compensation received by the publisher; meets guidelines established by Section 17(b) of the Securities Act of 1933
**Identifiable Disclosure** - a disclaimer accompanies each story about a

(continued...)

By clicking on the word "internet" in column two, immediately adjacent to the *Taipaonline* name on The List, the reader activates a hyperlink which transports the reader directly from the StockDetective website to the *Taipaonline* website. In the "Our Policy" section of the *Taipaonline* website, Agora explains that

> [m]embers of the organization, its officers, directors, employees, and associated individuals may have positions in investments referred herein and may add to or dispose of the same.
>
> But while we encourage our editors and analysts to put their own money where their mouth is, the editors, staff, and associates of the *Taipan* Group, as well as its directors, employees and associated individuals, are prohibited from trading on this information until after the information is published – i.e., at least 3 days after our publication has been mailed to our subscribers.

Agora alleges that it does not provide "paid small caps 'analysis.'" Complaint at ¶¶17-

---

[4](...continued)
specifically identified stock; better than blanket disclosure but still falls short of the SEC required description of compensation
**Insufficient Disclosure** - insufficient or no information at all is provided to allow the reader to determine that a fee was paid for the "story" or research.
**N/A** - disclosure information was not available to Stock Detective as of the date of the report
**Unpaid Promoter** - "analysts" or "stock pickers" who claim they are not paid by the companies for publishing reports, but acknowledge that they do or might trade in shares of the companies they're writing about

Note: The ratings associated with the publications listed in the above referenced table were compiled by Stock Detective from information or materials believed to be accurate. These ratings are the opinion of the publisher as defined above. This does not purport to be a complete analysis of the aforementioned media. Any person(s) with information which may be contrary to these findings or having information which should be added to this list, is encouraged to contact the editor at editor@stockdetective.com.

Complaint at ¶11

20. Agora further contends that it does not engage in "pseudo-research" and "mere puffery," but engages in "real reporting and analysis" *Id.* Finally, Agora contends that it has never received any fees from stock issuers or their representatives to recommend a stock. *See id.* Agora singles out for particular attention F.com's use of the term "unpaid promoter" in association with *Taipaonline*. *See id.* at ¶18. Nevertheless, Agora does not contend that *Taipaonline*'s disclosure policy, which Agora acknowledges is directly accessible by a StockDetective reader by way of a hyperlink to *Taipaonline*'s website, is inconsistent with The List's definition of an "unpaid promoter."

IV. ANALYSIS

Under Maryland law (which the parties agree is applicable in this case), in order to make out a prima facie case of defamation the plaintiff must allege that (1) the defendant made a defamatory communication, i.e, that he communicated a statement tending to expose the plaintiff to public scorn, hatred, contempt, or ridicule to a third person who reasonably recognized the statement to be defamatory; (2) that the statement was false; (3) that the defendant was at fault in communicating the statement; and (4) that the plaintiff suffered harm. *See Peroutka v. Streng,* 116 Md.App. 301, 311, 695 A.2d 1287, 1293 (1997) (citing *Shapiro v. Massengill,* 105 Md.App 743, 772, 661 A.2d 202, *cert. denied,* 341 Md. 28, 669 A.2d 36 (1995)).

Settled First Amendment doctrine establishes that the burden is on the plaintiff to prove a publication is false before liability may attach under state defamation laws, at least

where a media defendant is involved. *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 16, 19-20 & n.6 (citing *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776-78 (1986)); *Biospherics, Inc. v. Forbers, Inc.*, 151 F.3d 180, 183 (4th Cir. 1998). The parties do not dispute the truism that F.com's website is entitled to the same level of First Amendment protection to which any hard-copy financial newsletter is entitled. *See Lowe v. S.E.C.*, 472 U.S. 181, 210 & n.58 (1985) ("To the extent that the chart service contains factual information about past transactions and market trends, and the newsletters contain commentary on general market conditions, there can be no doubt about the protected character of the communications . . . ."); *Lovell v. City of Griffin*, 303 U.S. 444, 452 (1938) ("The liberty of the press is not confined to newspapers and periodicals . . . The press in its historic connotation comprehends every sort of publication which affords a vehicle of information and opinion."); *Ginsburg v. Agora, Inc.*, 915 F.Supp. 733, 739-40 (D.Md. 1995) (citing *Lowe*, stating that "there is considerable authority . . . for the proposition that investment newsletters are subject to the same protection under the First Amendment as any other publication"); *Reliance Ins. Co. v. Barron's*, 442 F.Supp. 1341, 1345 (S.D.N.Y. 1977) (stating that an investment magazine's "expos[ure] to the public in plain language" of information implicit in a company's disclosure under federal securities law was "an important function of a free financial press" which should not be limited by damages actions).

Defendants' principal contention in support of their challenge to the legal sufficiency

of the one-count complaint is that plaintiff has sought to base its claim on a statement of opinion whose factual basis is fully disclosed. Though a statement of opinion is not immune from suit, a statement is not actionable unless it asserts a provably false fact or factual connotation. *See Bioshperics, Inc.*, 151 F.3d at 184; *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1093 (4th Cir. 1993). In divining the line between statements of fact and opinion, *Milkovich* places primary emphasis on the verifiability of the statement and examines the statement's language to determine if it may be interpreted as asserting a fact. *See Biospherics, Inc.*, 151 F.3d at 184; *Chapin*, 993 F.2d a at 1093.

Since the determination of whether a statement is capable of a defamatory meaning is a question of law to be determined by the court, *see Batson v. Shiflett*, 325 Md. 684, 723, 602 A.2d 1191, 1211 (1992); *Peroutka*, 116 Md.App. at 311, 695 A.2d at 1293, it is my task to "examine for [myself] the statements in issue and the circumstances under which they were made to see whether they are of a character which the principles of the First Amendment . . . protect." *New York Times Co. v. Sullivan*, 376 U.S. 254, 284-85 (1964) (quoting *Pennekamp v. Florida*, 328 U.S. 331, 335 (1946)). Pursuant to *Milkovich*, therefore, I must determine whether the alleged statements may reasonably be interpreted as stating or implying actual facts about Agora. *See Milkovich*, 497 U.S. at 20 (citing *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 50 (1988)); *Biospherics, Inc.*, 151 F.3d at 184 (citing *Milkovich*); *Chapin*, 993 F.2d a at 1093.

The burden, therefore, is on Agora to allege facts which, if proved, would establish,

as a threshold matter, the falsity of the alleged defamatory statements that were published by F.com. *See Milkovich*, 497 U.S. at 16, 19-20; *Conley*, 355 U.S. at 46-47; Fed.R.Civ.P. 8(a). Agora asserts that it has met its burden because it has alleged that it does not engage in "mere puffery," that it does not engage in "paid small caps 'analysis'" or "pseudo-research" and it is not an "unpaid promoter." Accordingly, it contends, the statements are verifiable as true or false. I reject this simplified approach as inconsistent with controlling case law.

Rather, recognizing that "words have different meanings depending on the context in which they are used and a meaning not warranted by the whole publication should not be imputed," *Peroutka*, 116 Md.App. at 311-12, 695 A.2d at 1293 (citing *Batson*, 325 Md. at 723, 602 A.2d at 1211), I am persuaded after a mature review of the allegations of the Complaint and the content of the publication at issue that the statements are not capable of defamatory meaning as to *Taipaonline* because (1) the statements regarding "real" reporting, "pseudo research," "paid small caps 'analysis'" and "mere puffery" (collectively "introductory statements") cannot reasonably be interpreted as stating actual facts about *Taipaonline*; and (2) when evaluated under *Milkovich* and *Peroutka*, the rating of *Taipaonline* as an "unpaid promoter" is not actionable because it constitutes an expression of opinion based on disclosed or readily available facts. Accordingly, I will grant the motion to dismiss.

A.    The Introductory Statements Cannot Reasonably Be Interpreted As Stating Actual Facts About *Taipaonline*

The introductory statements, when read in context, indicate that they have the purpose and effect of pointing out that some publications engage in "paid small cap 'analysis,'" "pseudo research" and "mere puffery," instead of "real reporting and analysis," and they generally introduce the reader to the asserted relevance of investment newsletters' disclosure policies in evaluating the objectivity of financial and investment reporting. Furthermore, the introductory statements are extracted from and summarize the Guide, which advises the reader in more specific terms of the importance of evaluating newsletter disclosure policies. The Guide illustrates varying disclosure policies by evaluating the policies of six named publications. *Taipaonline* is not among these named publications. Nowhere within the Guide or the List is *Taipaonline* named in connection with or in close proximity to the introductory statements.

Thus, in proper context, F.com's use of unquantifiable and indeterminate terms such as "real" and "pseudo," and its generalized characterization of the practice of some publications as "puffery" cannot "reasonably [be] interpreted as stating actual facts" about Agora or its publication. *Milkovich*, 497 U.S. at 20 (citing *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 50 (1988)); *Biospherics, Inc.*, 151 F.3d at 184 (citing *Milkovich*). Rather, like the statements in *Biospherics*, in which Forbes magazine characterized the product development by the plaintiff company as "hype and hope," *Biospherics, Inc.*, 151 F.3d at

185. F.com's statements about "real reporting," "mere puffery" and "pseudo analysis" are properly viewed, in context, to consist entirely of subjective, generalized statements about the importance of objectivity in financial reporting through the use of "irreverent and indefinite language." *See id.*

I have no doubt, moreover, that the defendants' use of the introductory statements, since they are not particularly directed at *Taipaonline*, is entirely consistent with "the rhetorical hyperbole and imaginative expression which has added much to the discourse of our Nation." *Milkovich*, 497 U.S. at 16-17, 20 (citing *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 53-55 (1988); *Biospherics, Inc.*, 151 F.3d at 184-85; *Peroutka*, 116 Md.App. at 321, 695 A.2d at 1298. The use of generalized subjective valuations, rhetorical hyperbole and imaginative expression "negat[es] the impression that the writing is stating fact." *Biospherics, Inc.*, 151 F.3d at 185 (citing *Milkovich*, 497 U.S. at 21). These statements cannot, I conclude, form the basis for a defamation action.

  B. The Rating of *Taipaonline* As An "Unpaid Promoter" Is Not Actionable Because It Constitutes An Opinion Based On Disclosed Or Readily Available Facts

I next determine whether publication of the rating of *Taipaonline* as an "unpaid promoter" is actionable. I conclude on the facts as alleged by Agora that it is not.

Maryland courts remain cognizant of *Milkovich*'s holding that the First Amendment does not create a wholesale defamation exception for anything that might be labeled opinion. *See Peroutka*, 116 Md.App. at 322, 695 A.2d at 1298; *Batson*, 325 Md. at 724, 602 A.2d

1191 (citing *Milkovich*, 497 U.S. at 18). A statement, "even if expressed in terms of an opinion, can be defamatory under certain circumstances regardless of whether the statement concerns a public figure or private person." *Peroutka*, 116 Md.App. at 321, 695 A.2d at 1297. When a statement is made in the form of an opinion, it becomes actionable "only if it implie[s] the allegation of undisclosed facts as the basis for the opinion." *Id.* at 323, 695 A.2d at 1298 (citing *Milkovich*, 497 U.S. at 19).

The principle that opinions based on disclosed facts are protected is well established. *See, e.g., Biospherics, Inc.*, 151 F.3d at 185; *Chapin*, 993 F.2d at 1093 (stating that when "the bases for the . . . conclusion are fully disclosed, no reasonable reader would consider the term anything but the opinion of the author drawn from the circumstances related"); *Standing Comm. on Discipline v. Yagman*, 55 F.3d 1430, 1439 (9th Cir. 1995) ("A statement of opinion based on fully disclosed facts can be punished only if the stated facts are themselves false and demeaning."); *Moldea v. New York Times Co.*, 15 F.3d 1137, 1144-45 (D.C.Cir. 1994) ("Because the reader understands that such supported opinions represent the writer's interpretation of the facts presented, and because the reader is free to draw his or her own conclusions based upon those facts, this type of statement is not actionable in defamation."); *cf. Phantom Touring, Inc. v. Affiliated Publications*, 953 F.2d 724, 731 n.13 (1st Cir. 1992).

When a statement is made in the form of an opinion, Maryland courts follow the Restatement (Second) of Torts, which distinguishes between "pure" opinions-- those based on disclosed or known facts-- and "simple" opinion-- those based on undisclosed facts. *See*

*Peroutka*, 116 Md.App. at 323, 695 A.2d at 1298-99. According to the Restatement, in circumstances where the defendant bases his expression of a "derogatory opinion of the plaintiff on his own statement of facts that are not defamatory, he is not subject to liability for the factual statement--nor for the expression of opinion, so long as it does not reasonably indicate an assertion of the existence of other, defamatory, facts that would justify the forming of the opinion." *Peroutka*, 116 Md.App. At 323, 695 A.2d at 1299 (citing Restatement (Second) of Torts § 566 cmt. c. (1976)).

The example commonly used to illustrate the line between actionable and protected statements of opinion is provided by *Milkovich*: "[U]nlike the statement, 'In my opinion Mayor Jones is a liar,' the statement, 'In my opinion Mayor Jones shows his abysmal ignorance by accepting the teachings of Marx and Lenin,' would not be actionable." *Milkovich*, 497 U.S. at 20; *Peroutka*, 116 Md.App. at 321, 695 A.2d at 1298 (repeating example).

F.com's rating of *Taipaonline* as an "unpaid promoter," when analyzed under *Peroutka* and *Milkovich*, is fully protectable opinion based on disclosed facts. As alleged in the Complaint, F.com's website clearly discloses the facts upon which its assessment of *Taipaonline* as an "unpaid promoter" is based. In particular, F.com discloses in the key to The List that it arrived at the opinion that *Taipaonline* is an "unpaid promoter" because *Taipaonline*'s publishers "claim they are not paid by the companies for publishing reports, but acknowledge that they do or might trade in the shares of the companies they're writing

-14-

about." Complaint at ¶11.

Moreover, F.com puts the reader on notice that the ratings are based on F.com's evaluation of disclosure policies and not on any other undisclosed facts; the rating key informs the reader that the disclosure "ratings are the opinion of the publisher as defined above. [They] do[] not purport to be a complete analysis of the aforementioned media." *Id.* *Peroutka*, 116 Md.App. at 323, 695 A.2d at 1299 (stating that the opinion is protected "so long as it does not reasonably indicate an assertion of the existence of other, defamatory, facts that would justify the forming of the opinion.").

The factual basis for the statement that *Taipaonline* satisfies F.com's formulation of "unpaid promoter" is confirmable, as acknowledged by Agora, by activating the hyperlink adjacent to *Taipaonline*'s name on The List and accessing *Taipaonline*'s own website. *See id.* at ¶14-15. At *Taipaonline*'s site, the reader can readily review *Taipaonline*'s disclosure policy, which reveals that its "[m]embers, . . . officers, directors, employees, and associated individuals may have positions in investments referred herein and may add to or dispose of the same." *Id.* at ¶16. Further, the disclosure policy reveals that "while we encourage our editors and analysts to put their own money where their mouth is, the editors, staff, and associates . . . as well as its directors, employees and associated individuals, are prohibited from trading on this information until after the information is published -- i.e., at least 3 days after our publication has been mailed . . . ." *Id.*

It is clear from the facts alleged by Agora that, like the statement "Mayor Jones shows

his abysmal ignorance by accepting the teachings of Marx and Lenin," *Milkovich*, 497 U.S. at 20; *Peroutka*, 116 Md.App. at 321, 695 A.2d at 1298, the statement by F.com, which in essence reads "Taipaonline is an unpaid promoter because it claims that it is not paid by the companies for publishing reports but acknowledges that it does or might trade in the shares of the companies it writes about," is not actionable. *See Peroutka*, 116 Md.App. at 320, 325, 695 A.2d at 1297, 1299 ("If the facts from which a defendant forms his or her opinion are given or are readily available and those facts cannot be proved false, the defendant is not subject to liability for the opinion.").

Agora argues that F.com may still be subject to liability, notwithstanding the disclosure of the facts upon which F.com's opinion was based, because F.com's assessment that *Taipaonline* rates as an "unpaid promoter" based on *Taipaonline*'s disclosure policy is erroneous. In other words, Agora takes umbrage at F.com's *redefinition* (for its purposes) of the term "promoter," which Agora contends has an accepted meaning in securities markets. Agora's argument in this regard is based on a flawed interpretation of *Milkovich;* nothing therein prohibits the appropriation and redefinition of so common a word.[5] Indeed, if the

---

[5]Agora fundamentally misreads the import of the language from *Milkovich* on which it relies. The Court in *Milkovich* qualified the principle that an opinion based on disclosed facts is shielded from defamation actions by noting that "[e]ven if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, *or if his assessment of these is erroneous*, the statement may still imply a false assertion of fact." *Milkovich*, 497 U.S. at 18-19 (emphasis added).

Agora mistakenly equates an "erroneous assessment" of facts with a disagreeable opinion. This reading runs not only contrary to the well established principle that an opinion based on fully disclosed facts is not subject to defamation actions, but is contrary to the quoted

(continued...)

word "murderer" does not enjoy such immutability in the law of defamation, then it is difficult to see why the word "promoter" should be so regarded. *Cf. Ollman v. Evans*, 750 F.2d 970, 1023 n.67 (D.C.Cir. 1984)(en banc)(Robinson, C. J., dissenting in part), *cert. denied*, 471 U.S. 1127 (1985).

V.   CONCLUSION

For the reasons set forth above, I will grant F.com's motion to dismiss for failure to state a claim upon which relief may be granted. An order follows.

Filed: March 28, 2000

ANDRE M. DAVIS
United States District Judge

---

[5](...continued)
language from *Milkovich*. Rather than addressing whether the opinion itself is "erroneous," the above quoted passage in *Milkovich* is directed to the speaker's stated understanding of the *facts* upon which she bases her opinion. When that understanding, or "assessment" of the facts is "erroneous," or incorrect or incomplete, then the opinion may not be protected. The passage does not purport to create liability in circumstances where, as here, the plaintiff believes an opinion to be "erroneous." *Cf. Kapiloff v. Dunn*, 27 Md.App. 514, 533, 343 A.2d 251, 264 (1975) ("An opinion is a comment on or an interpretation of fact. It is always related to the facts it purports to interpret. Depending on its conformity with sound critical standards, the opinion may be 'sound' or 'unsound,' 'good' or 'bad,' reasonable' or 'unreasonable,' but never true or false.'").
   Since Agora has not argued that F.com's assessment of Agora's disclosure policy, as that assessment is set forth in F.com's definition of an "unpaid promoter," is erroneous, incorrect, incomplete or inconsistent with the disclosure policy set forth on *Taipaonline*'s website, the opinion that *Taipaonline* rates as an "unpaid promoter" is fully protected.